IN RE: HENDREN, A MINOR CHILD, JENNIFER MICHELLE WHITTINGTON, PETITIONER
v. MICKEY ALAN HENDREN, RESPONDENT

No. COA02-683

(Filed 4 March 2003)

### Termination of Parental Rights— neglect—abandonment— best interests of child

The trial court did not abuse its discretion by terminating respondent father's parental rights under N.C.G.S. § 7B-1111, because clear, cogent, and convincing evidence revealed that: (1) although respondent was incarcerated and was prevented from having frequent contact with his son, he still neglected his child when respondent had the opportunity to request transferral to the hearing so that he could be present but he did not do so and he also sent a letter to his attorney asking that no action be taken to secure his presence based on respondent's fear of losing certain privileges he had worked to gain in the federal prison system; (2) respondent neglected and abandoned the minor child on the basis that there was no meaningful contact between respondent and the child for five years preceding the motion, respondent failed to even attempt to appear for the hearing, and respondent had filed a custody order mainly for the purpose of allowing his mother to continue visitation rights; and (3) it was in the child's best interest to terminate respondent's parental rights given the ideal situation which the child currently enjoys with petitioner mother and her husband, and considering respondent's long incarceration.

Appeal by respondent from order entered 20 December 2001 by Judge David V. Byrd in Wilkes County District Court. Heard in the Court of Appeals 21 January 2003.

*Maitri Klinkosum for petitioner-appellee.*

*Sofie W. Hosford for respondent-appellant.*

*Brendan C. Edge as Guardian ad Litem for Justin Alan Hendren, a minor child.*

ELMORE, Judge.

Respondent Mickey Hendren appeals an order terminating his parental rights as the father of Justin Alan Hendren.

**WHITTINGTON v. HENDREN (IN RE HENDREN)**

[156 N.C. App. 364 (2003)]

Justin Alan Hendren was born to Mickey Alan Hendren and Jennifer Michelle Whittington on 7 September 1992 in Wilkes County, North Carolina. When Justin was born, Ms. Whittington (petitioner) was sixteen years old, and Mr. Hendren (respondent) was eighteen years old. The biological parents were never married but remained together on and off for about six years. Petitioner alleged that the relationship was abusive, and she finally sought a permanent restraining order against the respondent. Respondent, according to petitioner's testimony, was charged federally with kidnaping, interstate domestic violence, car jacking, and using and carrying a firearm during and in relation to a crime of violence, as a result of an incident in which the petitioner was the victim. The respondent was sentenced to nineteen years in the federal correctional system. His incarceration began 27 August 1996 and he was in custody as of the time of the hearing concerning his parental rights.

Respondent's mother, Patty Hendren (Ms. Hendren), testified that before his incarceration, respondent was a caring and involved father who spent time with his son, provided for him financially, changed his diapers, and cared for him. Since his incarceration, Ms. Hendren testified that she had received from the respondent cards and letters addressed to the minor child Justin. Those cards and letters were not entered into evidence, however, as Ms. Hendren testified at trial that she had forgotten to bring them. Justin testified to receiving one or two cards for birthdays and a letter which he testified that he later told his mother to discard while they were cleaning.

Respondent has become a tutor while incarcerated, earning twelve cents per day. The fine in his judgment amounted to several thousands of dollars according to his mother's testimony. Respondent has not sent any financial aid to his child since his incarceration.

Respondent's last visit with the child was in August of 1999. At that time the respondent's mother picked Justin up for a weekend visit, and without the knowledge or permission of the petitioner, took Justin to West Virginia to visit the respondent in prison. Petitioner obtained a "no contact" order, captioned *98 CVD 1265, Wilkes County District Court.* At the expiration of that order, another "no contact" order was entered premised on the timely filing of a Petition to Terminate Parental Rights, which was properly and timely filed by petitioner's counsel. The trial court found that the respondent has had no meaningful contact with the child in the five years preceding the date of the order terminating his parental rights.

Respondent did not appear at the hearing to permanently end his parental rights. Counsel for the respondent brought to court a letter written by the respondent expressing his desire not to appear because he feared he would forfeit certain privileges which he had earned while in prison. He requested that no steps be taken to request or secure his transferral and appearance in court.

Four years before filing the petition for termination of respondent's parental rights, the petitioner married Mark Whittington. Since their marriage, Mr. Whittington has acted as Justin's father, playing sports with him, providing for his needs, and spending time with him. Justin calls Mr. Whittington "Dad." Mr. Whittington and the petitioner have a daughter together, and have bought a house together. Justin is covered on Mr. Whittington's insurance policy. Mr. Whittington has two jobs and works to provide for the family. Mr. Whittington, the petitioner, and Justin each testified to Justin's desire to be adopted and have the same last name as the rest of the family. Mr. Whittington testified that he wishes to adopt Justin and raise him as his son.

Justin testified in court that he does not wish to have any further contact with the respondent. He testified that the idea of being forced to visit with the respondent makes him "sort of mad" and that he wants Mark Whittington to be his father. The evidence showed that Justin is comfortable in his present familial relationship and that the petitioner and her husband offer him stability with regard to residence, material support, and emotional support.

Respondent appealed the order terminating his parental rights, citing error in the findings that he neglected his son, that he fails to show the love and concern that would be expected from a father, and asserting that he has maintained as much contact as his incarceration allows. Respondent also assigns error to the finding that termination of his parental rights is in the child's best interest.

## I.

In a termination of parental rights case, the standard of review is a two-part process: (1) the adjudication phase, governed by section 7B-1109 of our General Statutes, and (2) the disposition phase, governed by section 7B-1110. *In re Blackburn*, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001).

During the adjudication phase, the burden of proof rests on petitioner to prove by clear, cogent, and convincing evidence that one

or more of the statutory grounds set forth in section 7B-1111 for termination exists. N.C. Gen. Stat. § 7B-1109(e)-(f) (2001); *Blackburn*, 142 N.C. App. at 610, 543 S.E.2d at 908. The standard of appellate review is whether the trial court's findings are supported by clear, cogent, and convincing evidence and whether the findings support the conclusions of law. *In re Allred*, 122 N.C. App. 561, 565, 471 S.E.2d 84, 86 (1996).

If petitioner meets the burden of proof that grounds for termination exist, the trial enters the disposition phase and the court must consider whether termination is in the best interest of the child. *Blackburn*, 142 N.C. App. at 610, 543 S.E.2d at 908. It is within the trial court's discretion to terminate parental rights upon a finding that it would be in the best interests of the child. *Id.* at 613, 543 S.E.2d at 910. The trial court's decision to terminate parental rights is reviewed on an abuse of discretion standard. *In re Nesbitt*, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001).

## II.

Looking first at the adjudication phase, a court's finding of one of the statutory grounds for termination, if supported by competent evidence, will support an order terminating parental rights. *In re Frasher*, 147 N.C. App. 513, 515, 555 S.E.2d 379, 381 (2001). Section 7B-1111 provides nine separate grounds upon which an order terminating parental rights may be based. N.C. Gen. Stat. § 7B-1111 (2001).

In order to terminate parental rights, the court must find one or more of the listed statutory factors in section 7B-1111. In support of its conclusion that respondent's parental rights should be terminated as to Justin Hendren, the trial court found that the respondent had neglected and abandoned the child pursuant to sections 7B-1111(a)(1) and (7). Respondent's first assignment of error addresses the court's finding that he neglected Justin within the meaning of 7B-1111.

A "neglected juvenile" is defined in section 7B-101(15) of the General Statutes as:

[A] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent . . . or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an envi-

ronment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15) (2001).

This Court has further construed the definition of neglect: "An individual's 'lack of parental concern for his child' is simply an alternate way of stating that the individual has failed to exercise proper care, supervision, and discipline as to that child." *In re Williamson*, 91 N.C. App. 668, 675, 373 S.E.2d 317, 320 (1988). Further, in determining whether neglect has occurred, the trial judge may consider the parent's failure to provide the personal contact, love, and affection that inheres in the parental relationship. *In re Mills*, 152 N.C. App. 1, 7, 567 S.E.2d 166, 170 (2002).

Respondent contends that his incarceration prevented him from having frequent contact with his son. Incarceration alone, however, does not negate a father's neglect of his child. *In Re Williams*, 149 N.C. App. 951, 563 S.E.2d 202 (2002) (father was incarcerated and his parental rights were terminated because he failed to show filial affection for his child). *Compare In re Clark*, 151 N.C. App. 286, 565 S.E.2d 245 (2002) (termination of parental rights reversed where father was incarcerated and evidence was insufficient to find that he was unable to care for his child), *disc. review denied*, 356 N.C. 302, 570 S.E.2d 501 (2002).

Although his options for showing affection are greatly limited, the respondent will not be excused from showing interest in the child's welfare by whatever means available. The sacrifices which parenthood often requires are not forfeited when the parent is in custody. In the case at bar, the respondent had the opportunity to request transferal to the hearing, so that he could be present. Not only did he fail to request to be present, he sent a letter to his attorney asking that no action be taken to secure his presence, because he feared losing certain privileges he had worked to gain in the federal prison system. As Judge Byrd noted in his order, in findings of fact numbered 9-11:

9. [T]he counsel for the Respondent informed the Court that Respondent had communicated with his counsel and informed his counsel that he did not wish to avail himself of the procedures which could have brought him before this Court.

10. The Court specifically finds that Respondent was able to avail himself of the procedure to bring him before this Court, but

chose to decline to avail himself of such procedure. The Court also notes and specifically finds that, prior to the hearing in this matter, counsel for the Respondent read into the record a letter, written by Respondent to counsel, indicating that Respondent did not want his counsel to attempt to have Respondent writted to court.

11. The Court further finds that if the Respondent was required to sacrifice any privileges in the federal prison system in order to be present at a hearing to so permanently effected [sic] his parental rights, the Respondent should have initiated the process to be present at said hearing. However, he made a voluntary and reasoned choice to forgo his presence at the hearing.

We therefore hold that the court's conclusion that the respondent neglected Justin is supported by the findings of fact, and that those findings are supported by competent evidence.

III.

Respondent's second assignment of error addresses the finding that Justin was abandoned by the respondent.

Section 7B-1111(7) of the General Statutes provides that termination of parental rights may be ordered if:

The parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion, or the parent has voluntarily abandoned an infant pursuant to G.S. 7B-500 [juvenile being taken into custody upon parent voluntarily delivering the infant not expressing intent to return] for at least 60 consecutive days immediately preceding the filing of the petition or motion.

N.C. Gen. Stat. § 7B-1111(a)(7) (2001).

The court found that respondent neglected and abandoned Justin on the basis that there was no meaningful contact between the respondent and the child for five years preceding the motion, and that the respondent failed to even attempt to appear for the hearing. Although the respondent had filed a custody order, the court found that this was mainly for the purpose of allowing the grandmother to continue visitation rights.

Respondent again argues that the respondent's incarceration prevented him from having more contact with the child. Even though

the respondent was incarcerated, he could have made more of an effort to maintain contact with his child. The fact that he requested that no effort be made to bring him to court so that he might appear at the hearing shows that Justin is somewhere below his personal privileges in the respondent's priorities.

We conclude therefore that the petitioner did carry the burden to show by clear, cogent, and convincing evidence that the respondent neglected and abandoned his child. The trial court's findings thus support its conclusions of law.

## IV.

The court must also find, in the dispositional phase, that termination of the respondent's parental rights is in the best interest of the child. Considering the ideal situation which the child currently enjoys with petitioner and her husband, and considering respondent's long incarceration, the court agreed with the arguments of the Guardian ad Litem and found that it was in Justin's best interest to terminate respondent's parental rights. We hold that the court did not abuse its discretion.

Assignment of error number three was not argued in respondent's brief and is therefore deemed waived under the North Carolina Rules of Appellate Procedure, Rule 28(a).

Although these cases are emotionally difficult for the parties involved, the lower court made very careful findings and thoroughly considered all the evidence. We affirm the order of the trial court terminating respondent's parental rights.

Affirmed.

Chief Judge EAGLES and Judge McCULLOUGH concur.