GEER, Judge.
Respondent E.D.B., father of the minor child M.S.B., appeals the order of the district court terminating his parental rights. The father argues on appeal primarily that the record contains insufficient evidence to support the termination of the father's parental rights. After reviewing the record, we hold that the trial court's findings of fact are supported by competent evidence, and those findings support the trial court's conclusion of law that the father was neglecting M.S.B. Because the record contains nothing to suggest that the trial court abused its discretion in concluding that the best interests of M.S.B. required termination, we affirm the trial court.
Facts
On 3 June 2002, M.S.B.'s mother relinquished custody of her three children, including M.S.B., to the Harnett County Department of Social Services ("Harnett DSS"). Prior to that date, M.S.B. and her two siblings lived with their mother in a car. Harnett DSS placed the children in foster care.
Shortly after the mother relinquished custody, a Harnett DSS social worker contacted the father, who lived in Sampson County, and asked him to make a plan of care for M.S.B. The father, accompanied by his grandmother, went to Harnett DSS and requested that he be given custody of the child. Harnett DSS then requested the Sampson County Department of Social Services ("Sampson DSS") to conduct a home study and determine whether custody of M.S.B. could be given to the father.
On 13 September 2002, a Sampson DSS social worker, Sandra Hines, met with the father to evaluate his plan of care for M.S.B. Sampson DSS learned that the father did not have his own home, but instead was residing with his grandmother who had recently adopted two of her own grandchildren. The grandmother and grandchildren were living in a two-bedroom home with M.S.B.'s father sleeping on his grandmother's sofa. The father had no plan for where M.S.B. would sleep, was unemployed, and was considering traveling to Kentucky to find work. Because the father did not have a job and did not have a plan to care for M.S.B., Sampson DSS did not recommend giving the father custody of the child. Pursuant to N.C. Gen. Stat. § 7B-909 (2003), Harnett DSS sought review of the child's placement at a hearing scheduled for 22 November 2002. The hearing was ultimately continued because the father had not been formally served and was not present. His grandmother was present, but indicated that she had been unable to provide transportation for the father due to inclement weather conditions. On 13 December 2002, the court reviewed the status of the child's placement, concluding that the permanent plan for the child should be adoption and Harnett DSS should proceed to terminate the father's parental rights. The father did not attend this hearing either.
Harnett DSS filed a petition to terminate the father's parental rights on 28 January 2003. In that petition, Harnett DSS alleged that the father had (1) neglected the child, (2) willfully failed to pay a reasonable portion of the cost of care for the child during the previous six months while the child was in foster care, and (3) abandoned the child and showed a willful desire to forego his parental rights. Following an evidentiary hearing on 8 August 2003, the trial court entered an order on 29 September 2003 terminating the father's parental rights based on all the grounds alleged in the petition. The father filed a timely notice of appeal from this order on 3 October 2003.
Standard of Review
A termination of parental rights proceeding involves two separate analytical phases: an adjudicatory stage and a dispositional stage. In re Blackburn, 142 N.C. App. 607, 610, 543S.E.2d 906, 908 (2001). A different standard of review applies to each step.
At the adjudicatory stage, "the party petitioning for the termination must show by clear, cogent, and convincing evidence that grounds authorizing the termination of parental rights exist." In re Young, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997). If the trial court concludes that the petitioner has proven grounds for termination, this Court must determine on appeal whether "the court's findings of fact are based upon clear, cogent and convincing evidence and [whether] the findings support the conclusions of law." In re Allred, 122 N.C. App. 561, 565, 471 S.E.2d 84, 86 (1996). Factual findings that are supported by the evidence are binding on appeal, even though there may be evidence to the contrary. In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 321 (1988).
If the trial court concludes that the petitioner met its burden to prove at least one ground for termination, the trial court proceeds to the dispositional phase and decides whether termination is in the best interests of the child. N.C. Gen. Stat. § 7B-1110(a) (2003); Blackburn, 142 N.C. App. at 610, 543 S.E.2d at 908. This Court reviews that decision under an abuse of discretion standard. In re Nesbitt, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001).
Grounds to Terminate Parental Rights
In its order, the district court found that three separate grounds for termination existed: (1) neglect, (2) willful failureto pay child support, and (3) abandonment. In order for a district court to terminate parental rights, it only needs to conclude that one ground for termination exists. In re Pierce, 67 N.C. App. 257, 261, 312 S.E.2d 900, 903 (1984). Thus, a district court's order will be upheld so long as one of the grounds for termination found by the trial court is supported by clear, cogent, and convincing evidence. In re Bradshaw, 160 N.C. App. 677, 682, 587 S.E.2d 83, 87 (2003). After reviewing the record, we conclude that the trial court's determination that the father neglected M.S.B. is supported by the findings of fact, and those findings were based upon competent evidence.
According to N.C. Gen. Stat. § 7B-1111(a)(1) (2003), a court may terminate parental rights if the parent has neglected the child. A neglected juvenile is defined by the General Statutes as:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15) (2003). In this case, the district court found that the father neglected his child because he (1) had failed to have contact with M.S.B. while she lived with her mother; (2) had little or no contact with Harnett DSS to inquire about the child's welfare while in foster care; (3) had never sent the child a card or a birthday present; (4) did not have an appropriate plan for the child's care and supervision; and (5) failed to pay childsupport to the mother and Harnett DSS in order to assist with the child's care.
These findings, if supported by competent evidence, are sufficient to warrant a conclusion of neglect. See In re Yocum, 158 N.C. App. 198, 204, 580 S.E.2d 399, 403 ("Here, the evidence showed, and the trial court found, that respondent neglected the minor child's welfare, in that he never paid any child support for the minor child and did not send the minor child any gift or other type of acknowledgment on her birthday."), aff'd per curiam, 357 N.C. 568, 597 S.E.2d 674 (2003); In re Humphrey, 156 N.C. App. 533, 540-41, 577 S.E.2d 421, 427 (2003) (finding that the district court properly terminated parental rights based upon neglect when the evidence showed that the mother failed to contact the child, failed to provide financial support for the child, and failed to provide any type of love or affection to the child); In re Hendren, 156 N.C. App. 364, 368, 576 S.E.2d 372, 375-76 (2003) (when considering the issue of neglect, a parent's "failure to provide the personal contact, love, and affection that inheres in the parental relationship" is a proper consideration in determining whether neglect has occurred). Respondent does not argue otherwise.
Instead, the father argues that the record contains insufficient evidence to support the findings of fact necessary to the trial court's conclusion that defendant neglected M.S.B. Our review of the record in this case reveals that there is sufficient evidence to support the district court's findings of fact.
A. The Father's Contact with M.S.B.
In findings of fact 10 and 29, the trial court found:
10. The juvenile was born out-of-wedlock. The respondent father has had no contact with the juvenile since her birth and she has not had any ties or bonds with the father's family.
. . . .
29. The father's failure to contact the petitioner to inquire about the child was an act of neglect. The father's failure to send cards and presents was an act of neglect. Such acts of neglect were a complete forbearance of his parental rights and obligations to his child. These failures to attend to his child occurred after he was aware the child was in the custody of the petitioner. The father left the State and went to Kentucky. He knew about scheduled court hearings concerning his child but he did not attend them. His actions of neglect and failure to assume his parent[al] rights and obligations were done knowingly and willfully.
The father argues there is insufficient evidence for the trial court to find that the "father has had no contact with the juvenile since her birth and she has not had any ties or bonds with the father's family."[1]
We note first that the father has not assigned error to finding of fact number 25, which states:
Since the child was placed with the petitioner in June 2002, the father has not sent thechild any presents or birthday cards. He has not called to ask about her welfare. He has not attempted to contact her. All the contacts made by the father to the petitioner were in response to the social worker's request.
Findings of fact that are not challenged on appeal "are deemed supported by competent evidence" and are binding on this Court. In re Padgett, 156 N.C. App. 644, 648, 577 S.E.2d 337, 340 (2003).
In addition, findings of fact 10 and 29 are supported by the testimony of Sandra Hines, who testified that the father told her that he had no contact with the child since she was born. Additionally, Anne Verdin, a social worker for Harnett DSS, testified that the father told her that he had had no contact with the child since she was "very, very small." Verdin also testified that the father failed to contact her for months while the child was in the custody of Harnett DSS, either to inquire about how the child was doing or to offer a plan for her care, and that the father had not sent any presents or cards to the child while she was in DSS custody.
There is also evidence to support the determination in finding 29 that the father knew about the scheduled court hearings, but failed to attend them. While the father was not present at the 22 November 2002 hearing, his grandmother attended and indicated that the father could not attend due to inclement weather - even though he was living with or next door to his grandmother at the time. The hearing was continued until 13 December 2002, and the order from that hearing notes that the matter was properly noticed. Thetrial court was entitled to draw the inference from these facts that the father knew of the hearings, but chose not to attend.[2]
B. Lack of a Plan of Care and Supervision
The father assigned error to finding of fact number 14, in which the trial court found that the father did not have an appropriate plan of care for the child at the time he was staying with his grandmother. Sandra Hines, however, testified that the father told her that he was unemployed, that he had no home of his own, and that he was staying on his grandmother's couch. The father offered that the child could stay with his grandmother, but she had just adopted two of her own grandchildren and there was no place for the child to sleep. Hines did not recommend the father's plan for the child because there was no room for the child in the grandmother's house and the father was unemployed.
Although the father's testimony indicated that he later did have his own apartment, his only plan for financially caring for M.S.B. at that time was a pending, but unapproved, claim for disability. Based upon this evidence, the trial court was entitled to find that the father lacked an appropriate plan of care for M.S.B.
C. Failure to Pay Child Support
With respect to the findings on child support, the father first argues that the trial court relied upon inadmissible hearsay to find that he had failed to pay child support. Specifically, the father objects to the testimony of Sandra Hines because he argues that she did not have personal knowledge of his failure to make payments.
We need not decide whether Hines' testimony was inadmissible hearsay because its admission was not prejudicial. "Where improperly admitted evidence merely corroborates testimony from other witnesses, we have found the error harmless." State v. Fullwood, 323 N.C. 371, 384, 373 S.E.2d 518, 527 (1988), sentence vacated on other grounds, 494 U.S. 1022, 108 L. Ed. 2d 602, 110 S. Ct. 1464 (1990). At the termination hearing, Ann Verdin and Paulette Howard both testified without objection that the father had failed to pay child support to Sampson DSS and Harnett DSS and was in arrears as to M.S.B.'s mother. Thus, any error in the admission of Hines' testimony was harmless. The father does not otherwise assign error to the trial court's finding that he did not pay child support.
Instead, the father argues that there is insufficient evidence to support the trial court's finding that he had the ability to earn income that he could have contributed to the support of the child. While the father assigns error to finding of fact 23 that he could earn some income, the father did not assign error to findings 17, 18, 19, or 21, which state: 17. While the child was in the custody of her mother, a child support action was commenced and an order was entered requiring the father to pay child support to the mother. The last child support payment made by the father to the mother was on April 17, 2002. He made no further payments of child support to the mother.
18. Since the child was placed with the petitioner, the father made no child support payment[s] to the petitioner; he has not offered or made any contribution to the support of the child.
19. The father is a college graduate with a four year degree in business engineering. He is a veteran of the United States Army.
. . . .
21. In December 2002, the father left Clinton NC for the State of Kentucky to work. He testified he sold his property in Clinton, NC and moved to Kentucky. The father stayed in Kentucky and worked until April 2003.
These uncontested findings establish that defendant had the ability to earn some income that he could have contributed to the child's support.
Even without considering the unchallenged findings of fact, the record contains evidence that the father had the ability to earn income and contribute to the support of M.S.B. The father's own testimony shows that (1) he had two different jobs in Kentucky before he returned to Clinton, (2) that he was employed in Clinton for a short period of time after his return, and (3) that he was employed in Kentucky immediately before and after the filing of the petition. This evidence supports the trial court's finding that hewas able to earn some income during the lifetime of M.S.B., including while the child was in the custody of Harnett DSS, that he could have, but did not, contribute to the welfare of the child.[3] See In re Faircloth, 161 N.C. App. 523, 526, 588 S.E.2d 561, 564 (2003) (noting that findings that the parent had been employed at some point were insufficient in the absence of evidence that the parent was or could be employed during the period relevant to the petition).
D. Lack of Prior Adjudication
In his brief, the father argues that the trial court erred in concluding that he neglected his child when there was no prior adjudication of neglect before the termination proceeding. The father mistakes the import of In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984). Ballard holds only that a prior adjudication may be evidence of neglect, although such an adjudication standing alone would rarely be sufficient to establish the existence of neglect at the time of the termination proceedings. Id. at 714, 319 S.E.2d at 231-32 ("Certainly, termination of parental rights for neglect may not be based solely on conditions which existed in the distant past but no longer exist."). See also In re Shermer, 156 N.C. App. 281, 286, 576S.E.2d 403, 407 (2003) ("Although prior adjudications of neglect may be admitted and considered by the trial court, they will rarely be sufficient, standing alone, to support a termination of parental rights . . . .").
No case suggests that a prior adjudication of neglect is a precondition for termination of parental rights on the grounds of neglect. A petitioner may prove neglect at the time of the termination hearing by showing either (1) current neglect or (2) a prior adjudication of neglect together with evidence that further neglect is probable in the future. Id. Here, the trial court relied upon evidence that the father had neglected M.S.B. in the past, was continuing to neglect M.S.B., and was likely to neglect M.S.B. in the future. As discussed above, the evidence supported the trial court's findings and those findings support the trial court's conclusion of neglect.
Because we hold that the district court did not err in its conclusion that the father neglected the child, we need not address the father's arguments regarding willful failure to pay child support and abandonment. "A finding of any one of the enumerated termination grounds is sufficient to support the order of the trial court." Yocum, 158 N.C. App. at 204, 580 S.E.2d at 403-04.
Termination of Parental Rights
The remaining assignments of error by the father concern the trial court's decision that it was in the child's best interest to terminate his parental rights. The termination of parental rights statute provides: Should the court determine that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent with respect to the juvenile unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated.
N.C. Gen. Stat. § 7B-1110(a). Our appellate courts have construed the language of the statute to vest discretion in the trial court to decide when it is in the best interests of the child to terminate parental rights. Blackburn, 142 N.C. App. at 613, 543 S.E.2d at 910. "Evidence heard or introduced throughout the adjudicatory stage, as well as any additional evidence, may be considered by the court during the dispositional stage." Id. (applying predecessor statute N.C. Gen. Stat. § 7A-289.31(a) (1998)).
The father first argues that the trial court's failure to make a clear distinction between the "grounds" phase and the "best interest" phase "muddied the waters" between the two stages. Although there are two separate stages requiring application of two different standards in a termination of parental rights proceeding, the court does not have to conduct two separate hearings. In re Carr, 116 N.C. App. 403, 407, 448 S.E.2d 299, 301 (1994).
Even when the trial court conducts only a single evidentiary hearing, this Court presumes "in the absence of some affirmative indication to the contrary, that the judge, having knowledge of the law, is able to consider the evidence in light of the applicable legal standard and to determine whether grounds for terminationexist before proceeding to consider evidence relevant only to the dispositional stage." In re White, 81 N.C. App. 82, 85, 344 S.E.2d 36, 38, disc. review denied, 318 N.C. 283, 347 S.E.2d 470 (1986). In this case, the father has not pointed to anything in the record indicating that the trial court failed to apply the proper standards. The father argues only that the trial judge's reference in the same sentence to both "clear and cogent" evidence and that a termination of parental rights was in M.S.B.'s best interests suggests that the trial court did not distinguish between the two standards. We do not believe that a reference to "clear and cogent" evidence rather than "clear, cogent and convincing" evidence is anything more than a lapsus linguae. Further, the mention of both standards simply reflects the dual nature of these proceedings. After independently reviewing the record, we have identified nothing that suggests the trial court failed to properly recognize the different stages and applicable standards.
Finally, the father argues that the trial court abused its discretion when it terminated his parental rights because he should have been given more time, and DSS should have made a greater effort, to reunify him with his child. The trial court's findings, many of which are not assigned as error, show a lack of contact between the father and the child beginning shortly after the birth of M.S.B.; an ongoing lack of concern for M.S.B. on the part of the father; and a failure by the father to continue to pay child support. The trial court was entitled to conclude that the father had been given ample opportunity to demonstrate his interest in andconcern for M.S.B. and that allowing him further time was not in the best interests of M.S.B.
In light of the court's findings and the underlying evidence, we cannot say that the trial court's decision that it was in the best interests of the child to terminate the father's parental rights was an abuse of discretion. See Yocum, 158 N.C. App. at 206, 580 S.E.2d at 404 (holding that evidence that the father never paid any child support, never acknowledged or gave the minor a gift on her birthday demonstrated a "pattern of neglect" such that it "was well within the trial court's discretion to conclude that the child's best interests would be served by terminating respondent's parental rights").
Affirmed.
Judges LEVINSON and THORNBURG concur.
Report per Rule 30(e).
Judge THORNBURG concurred prior to 31 December 2004.

Finding of Fact number 29 contains both findings of fact and conclusions of law. Despite the fact that this finding may be mislabeled, we may examine the findings to see if they are supported by competent evidence and determine if the findings support the conclusions of law. Dunevant v. Dunevant, 142 N.C. App. 169, 173, 542 S.E.2d 242, 245 (2001).

The father assigned error to finding of fact number 16, which found that a Harnett DSS social worker "advised the father to attend Court reviews of the child's placements," which he then did not attend. While we agree that there is no evidence in the record to support the finding that a social worker advised the father to attend court, this error is immaterial to the outcome and, therefore, does not require reversal. In re Isenhour, 101 N.C. App. 550, 553, 400 S.E.2d 71, 73 (1991).

There was one finding of fact regarding the father's employment that was not supported by the evidence. Finding of fact number 20 stated that in July 2002, the father was employed as an animal control officer in Havelock, N.C. While there was no evidence in the record to support this finding, it is not prejudicial to the father because other findings of the trial court and the underlying evidence support the determination that the father had the ability to earn income, but failed to pay any child support. See Isenhour, 101 N.C. App. at 553, 400 S.E.2d at 73.