An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-786
NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

IN THE MATTER OF:

                                    Wake County
                                    No. 11 JT 338
A.U.B.-M.


Appeal by Respondent from order entered 9 April 2013 by Judge Margaret Eagles in District Court, Wake County. Heard in the Court of Appeals 10 December 2013.

> *Office of the Wake County Attorney, by Deputy Wake County Attorney Roger A. Askew, for Wake County Human Services, Petitioner-Appellee.*
>
> *Ellis & Winters LLP, by Lenor Marquis Segal, for Guardian ad Litem.*
>
> *Mary McCullers Reece for Respondent-Appellant.*


McGEE, Judge.


Respondent-Appellant Father ("Respondent") appeals from an order terminating his parental rights to his daughter A.U.B-M. ("the child"). Respondent challenges the grounds for termination found by the trial court. We affirm.

The child was born on 23 December 2011. Following the birth, both the child and her mother tested positive for marijuana. Wake County Human Services ("WCHS") filed a petition on 29 December 2011 alleging the child was a neglected juvenile. WCHS obtained nonsecure custody of the child on that date. Genetic marker testing subsequently confirmed that Respondent is the child's biological father. The trial court adjudicated the child as a neglected juvenile at a hearing on 21 March 2012 and continued legal custody with WCHS. At the close of a permanency planning hearing on 23 October 2012, the trial court directed that a permanent plan of adoption be pursued. The child's mother relinquished the child for adoption.

WCHS filed a motion for the termination of Respondent's parental rights on 2 January 2013. The trial court conducted an evidentiary hearing upon the motion on 19 March 2013. The trial court filed an order on 9 April 2013 terminating Respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (neglect) (2011); N.C. Gen. Stat. § 7B-1111(a)(2) (failure to make reasonable progress in correcting the conditions which led to child's placement in foster care); and N.C. Gen. Stat. § 7B-1111(a)(6) (incapability of providing for the proper care and

supervision of child). Respondent filed notice of appeal on 2 May 2013.

A trial court must find, based on clear, cogent and convincing evidence, the existence of one or more grounds listed by statute in order to terminate parental rights. N.C. Gen. Stat. § 7B-1111(a) (2011); *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997). We review a trial court's order terminating parental rights to determine whether the findings of fact are supported by clear, cogent and convincing evidence and whether the conclusions of law are supported by the findings of fact. *In re Shepard*, 162 N.C. App. 215, 221, 591 S.E.2d 1, 6 (2004). We conduct *de novo* review of the trial court's conclusions of law. *In re S.N., X.Z.*, 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008).

A parent neglects a child by failing to provide proper care, supervision, discipline or a safe environment or by abandoning the child. N.C. Gen. Stat. § 7B-101(15) (2011). "A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." *Young*, 346 N.C. at 248, 485 S.E.2d at 615. The trial court must consider evidence of any changed circumstances since the time of a prior adjudication and the

probability that the child will be neglected if returned to the parent's care. *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984).

Respondent contends that, at the time of the termination hearing, the circumstances did not support a conclusion that Respondent was neglecting the child, or was likely to neglect the child if she was given to Respondent's care. Respondent argues he has done the best he could under the circumstances of his incarceration by enrolling in classes offered by the prison.

The trial court found as fact that, at the time of the filing of the petition to terminate rights, Respondent was incarcerated in Florida on two convictions of felony possession of cocaine, with an expected release date in September 2013. Respondent was previously incarcerated for four years on a conviction of armed robbery and was released from that incarceration in 2010. While out of prison, Respondent was involved in a relationship with the child's mother. Respondent learned the mother was pregnant with the child in April of 2011. Respondent returned to prison in December 2011 for the convictions of the drug offense. Six and one-half of the previous eight years of Respondent's life have been spent

incarcerated upon serious felony charges. Respondent has not had any contact with the child.

The trial court also found that in Respondent's case and visitation plans, Respondent was ordered to, *inter alia*: (1) complete a substance abuse assessment and follow through with the recommendations of that assessment, which included attending meetings of treatment groups and AA/NA at a minimum of once weekly; (2) complete a psychological evaluation or mental health assessment as provided by the prison and comply with the recommendations of the assessment, such as receiving therapy or taking prescribed medications; (3) complete all components of the Family Integrity Program; (4) complete his Parenting II group and demonstrate safe and nurturing parenting skills during visitations with the child; (5) participate in meetings and court hearings involving the child, including by his attorney or by mail; (6) maintain contact with WCHS bi-weekly by mail until released from prison; and (7) establish and maintain a safe, stable home free of substance abuse, criminal activity, violence, and transient household members. Respondent was offered the opportunity to register for AA/NA classes and participate in a Family Integrity Program, which is a comprehensive 100-hour program offering parenting, anger

management and life skills training. Respondent attended only twelve hours each of the AA/NA classes and the Family Integrity Program before he dropped out of both. Respondent needed another six months to complete the program. Respondent also had not completed a mental health or substance abuse assessment. Although a WCHS social worker provided Respondent with multiple postage-paid envelopes, Respondent failed to correspond with the social worker bi-weekly as ordered by the trial court, but instead mailed them on a monthly basis only.

The social worker responsible for Respondent's case testified that Respondent's mail correspondence did not include any cards, gifts or anything for the child. The report prepared for the termination hearing showed that placement of the child with a paternal relative was unavailable. Respondent proposed to live with the child at his mother's residence after he was released from prison, but a home study conducted by Florida authorities was negative. Attempts to place the child with three other paternal relatives were unsuccessful.

> Although his options for showing affection are greatly limited, the respondent will not be excused from showing interest in the child's welfare by whatever means available. The sacrifices which parenthood often requires are not forfeited when the parent is in custody.

*Whittington v. Hendren (In re Hendren)*, 156 N.C. App. 364, 368, 576 S.E.2d 372, 376 (2003). The trial court's findings reflect that Respondent has not made those sacrifices. He dropped out of classes designed to help him be a parent to the child and provide a safe, secure and loving home for her. He dropped out of programs designed to help him overcome drug and alcohol abuse issues. He has not taken advantage of opportunities to cultivate a relationship with the child. Respondent does not have an acceptable plan for caring for the child after he is released from incarceration.

We conclude the trial court's findings of fact support a conclusion that Respondent has neglected the child and that it is likely the neglect will continue. We affirm the trial court's conclusion that grounds exist pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) to terminate Respondent's rights.

Because a finding of one ground will support termination of parental rights, we need not discuss Respondent's arguments concerning the other grounds for termination of his rights. *In re P.L.P.*, 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005).

We affirm the order terminating Respondent's parental rights.

Affirmed.

Judges McCULLOUGH and DILLON concur.

Report per Rule 30(e).