IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA15-613

 Filed: 19 January 2016

New Hanover County, No. 13 JT 218

IN THE MATTER OF: C.L.S.

 Appeal by Respondent–Father from order entered 4 March 2015 by Judge J.H.

Corpening, II in District Court, New Hanover County. Heard in the Court of Appeals

29 December 2015.

 David A. Perez for Respondent–Appellant Father.

 Jennifer G. Cooke for New Hanover County Department of Social Services,
 Petitioner–Appellee.

 Ellis & Winters LLP, by Steven A. Scoggan, for Guardian ad Litem.

 McGEE, Chief Judge.

 Respondent–Father (“Respondent”) appeals from an order terminating his

parental rights1 as to his minor child, C.L.S. We affirm the trial court’s order.

 New Hanover County Department of Social Services (“DSS”) filed a petition on

20 September 2013, alleging that C.L.S. was a neglected and dependent juvenile.

DSS alleged that C.L.S. tested positive for cocaine and PCP at birth, and that C.L.S.’s

mother tested positive for cocaine. The mother further admitted to using cocaine and

marijuana while pregnant with C.L.S. DSS alleged that C.L.S.’s mother “ha[d] a long

 1 The parental rights of the mother of C.L.S. were also terminated by the 4 March 2015 order,
but the mother does not appeal from this order.
 IN RE: C.L.S.

 Opinion of the Court

history with [DSS] dating back many years,” noting that she had relinquished her

parental rights to another child who also tested positive for cocaine at birth. DSS

also alleged that the mother had “a long history of substance abuse, and mental

health issues and a drug-related criminal history,” and was unemployed and living

with her mother, who “also ha[d] a long history of involvement with DSS and would

not [be] recommended for placement” of C.L.S. DSS further alleged that the mother

reported that C.L.S. was “the product of a one night stand and the father [wa]s

unknown.”

 The trial court adjudicated C.L.S. neglected and dependent on 15 November

2013 based upon the mother’s stipulations to the allegations in DSS’s petition. At the

time of the adjudication, the identity of C.L.S.’s father was still unknown. Paternity

tests in May 2014 determined Respondent was the father of C.L.S. The trial court

ceased reunification efforts and changed the permanent plan for C.L.S. to adoption

on 29 September 2014.

 DSS filed a petition to terminate parental rights as to C.L.S. on 14 October

2014 on the grounds that both the mother and Respondent neglected C.L.S., had

willfully abandoned C.L.S. for more than twelve months without showing reasonable

progress in correcting the conditions of neglect which led to his removal, and that

Respondent had failed to take steps to legitimize C.L.S. In its petition, DSS alleged

that Respondent failed to enter into a Family Services Agreement when requested on

 -2-
 IN RE: C.L.S.

 Opinion of the Court

7 April 2014 indicating that “he did not wish to pursue a plan of reunification.”

Although Respondent then “indicated his willingness” to enter into a case plan on

26 June 2014, Respondent “declined to sign his case plan which included requests to

submit to a Comprehensive Clinical Assessment and follow any recommendations,

submit to random drug screens, complete a parenting assessment and comply with

any recommendations, and obtain and maintain stable housing and employment.”

Respondent was also incarcerated in May 2014 on pending charges said to have

included attempted first- or second-degree rape, second-degree kidnapping, breaking

or entering, misdemeanor larceny, false fire alarm, resisting, delaying, or obstructing

public officers, and for being a habitual felon. The trial court terminated both the

mother’s and Respondent’s parental rights as to C.L.S. on 4 March 2015. Respondent

appeals.

 Respondent first contends the trial court erred by concluding that there was

clear, cogent, and convincing evidence to support the trial court’s conclusion that

C.L.S. was neglected by Respondent at the time of the hearing, and thus asserts that

there was no evidence to terminate his parental rights on this statutory ground. We

disagree.

 N.C. Gen. Stat. § 7B-1111 sets out the statutory grounds for terminating

parental rights. N.C. Gen. Stat. § 7B-1111 (2013). A finding of any one of the

separately enumerated grounds is sufficient to support termination. See In re Taylor,

 -3-
 IN RE: C.L.S.

 Opinion of the Court

97 N.C. App. 57, 64, 387 S.E.2d 230, 233–34 (1990). “The standard of appellate review

is whether the trial court’s findings of fact are supported by clear, cogent, and

convincing evidence and whether the findings of fact support the conclusions of law.”

In re D.J.D., D.M.D., S.J.D., J.M.D., 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005).

 In the present case, the trial court first concluded that grounds existed to

terminate Respondent’s parental rights to C.L.S. based upon neglect in accordance

with N.C. Gen. Stat. § 7B-1111(a)(1). A “neglected” juvenile is defined in N.C. Gen.

Stat. § 7B-101(15) as

 [a] juvenile who does not receive proper care, supervision,
 or discipline from the juvenile’s parent, guardian,
 custodian, or caretaker; or who has been abandoned; or
 who is not provided necessary medical care; or who is not
 provided necessary remedial care; or who lives in an
 environment injurious to the juvenile’s welfare; or who has
 been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15) (2013). Thus, “[n]eglect is more than a parent’s failure

to provide physical necessities and can include the total failure to provide love,

support, affection, and personal contact.” In re D.J.D., 171 N.C. App. at 240,

615 S.E.2d at 33 (internal quotation marks omitted).

 Additionally, “[i]ncarceration alone . . . does not negate a father’s neglect of his

child,” Whittington v. Hendren, 156 N.C. App. 364, 368, 576 S.E.2d 372, 376 (2003),

because “[t]he sacrifices which parenthood often requires are not forfeited when the

parent is in custody.” Id. Thus, while incarceration may limit a parent’s ability “to

 -4-
 IN RE: C.L.S.

 Opinion of the Court

show affection, it is not an excuse for [a parent’s] failure to show interest in [a child’s]

welfare by whatever means available, [because a] father’s neglect of his child cannot

be negated by incarceration alone.” In re D.J.D., 171 N.C. App. at 240, 615 S.E.2d at

33 (citation and internal quotation marks omitted).

 Further, “[a]s always, the best interests of the children and parental fitness at

the time of the termination hearing are the determinative factors.” Id. at 239–40, 615

S.E.2d at 33 (emphasis added). Where “a child has not been in the custody of the

parent for a significant period of time prior to the termination hearing, the trial court

must employ a different kind of analysis to determine whether the evidence supports

a finding of neglect,” In re Pierce, 146 N.C. App. 641, 651, 554 S.E.2d 25, 31 (2001),

aff’d, 356 N.C. 68, 565 S.E.2d 81 (2002), “because requiring the petitioner in such

circumstances to show that the child is currently neglected by the parent would make

termination of parental rights impossible.” Id.

 In the present case, evidence was presented by the DSS social worker that,

when Respondent’s paternity of C.L.S. was confirmed, Respondent “stated that he

didn’t want to pursue a plan of reunification” with C.L.S. The DSS social worker also

testified that, before Respondent was incarcerated, she “attempted to engage

[Respondent] a couple of times by asking him to come in and meet with [her] and

enter into a visitation plan, and he called to reschedule a couple of times, [and then]

he no-showed a couple of times to those appointments.” Although the DSS social

 -5-
 IN RE: C.L.S.

 Opinion of the Court

worker testified that, after Respondent was incarcerated, he “did say that he wanted

to enter into a case plan,” when she “brought the case plan with [her] to visit him in

jail, . . . he declined to sign [it], saying that he wanted the input of his attorney before

signing it,” and when she asked Respondent about it several times after that, she

“never received it back from him.” The DSS social worker further testified that

Respondent never provided any financial support for C.L.S., never met C.L.S., and,

although he “discussed visitation briefly” with DSS before the paternity results were

completed, Respondent “was never able to come back to [DSS] for any of [the]

scheduled meetings.” Thus, the record before us reflects that, at the time of the

termination hearing, Respondent had failed “to provide love, support, affection, and

personal contact” to C.L.S. See In re D.J.D., 171 N.C. App. at 240, 615 S.E.2d at 33.

Because this evidence supported the trial court’s findings that Respondent “indicated

an unwillingness to enter a Family Services Agreement,” “ha[d] never met [C.L.S.],”

and “ha[d] no bond with” C.L.S., we conclude that there was evidence to support the

trial court’s conclusion that the juvenile was neglected by Respondent and, thus, that

there was evidence to terminate his parental rights on this statutory ground. Since

we have “determine[d] there is at least one ground to support [the] conclusion that

[Respondent’s] parental rights should be terminated, it is unnecessary to address the

remaining grounds” challenged in Respondent’s brief. See In re P.L.P., 173 N.C. App.

1, 8, 618 S.E.2d 241, 246 (2005) aff’d per curiam, 360 N.C. 360, 625 S.E.2d 779 (2006).

 -6-
 IN RE: C.L.S.

 Opinion of the Court

AFFIRMED.

Judge STEPHENS concurs.

Judge TYSON dissents with a separate opinion.

 -2-
 No. COA15-613 – In re C.L.S.

 TYSON, Judge, dissenting.

 The majority’s opinion finds clear, cogent, and convincing evidence supports

the trial court’s conclusion that the juvenile was neglected by Respondent and affirms

the trial court’s order to terminate his parental rights on the statutory ground of

neglect. I disagree and respectfully dissent.

 The majority’s opinion “parades the horribles” of the actions of the mother,

which formed the basis of DSS’s petition to terminate the mother’s parental rights.

She is not a party to this appeal.

 There is no indication in September 2013, when the initial petition alleging

neglect by the mother was filed, that Respondent even knew he was the parent of a

child. The trial court’s review order, filed in February 2014, shows the juvenile’s

mother indicated Respondent may be the father of C.L.S. Subsequently, Respondent

complied with a DNA paternity test in May 2014. DSS filed its petition to terminate

Respondent-father’s parental rights in October 2014, only five months after

Respondent learned he was C.L.S.’s father.

 Nothing in the record shows Respondent was ever joined to the underlying

action adjudicating C.L.S. neglected and dependent. The adjudication of C.L.S. was

entered on 15 November 2013, months before Respondent knew he was the parent of

a child. All of the statutorily required actions taken by DSS towards the initial goal

of reunification with the child were aimed solely at the mother, not at Respondent.
 IN RE C.L.S.

 TYSON, J., dissenting

 The transcript shows Respondent was incarcerated one month after the DNA

test revealed his paternity. At the time of the Termination of Parental Rights

hearing, Respondent had not been tried for the offenses for which he was incarcerated

awaiting trial.

 Neglect

 The majority finds there was clear, cogent and convincing evidence to support

the trial court’s conclusion that C.L.S. was neglected by Respondent and grounds

existed for termination of Respondent’s parental rights. I disagree.

 “[I]n deciding whether a child is neglected for purposes of terminating parental

rights, the dispositive question is the fitness of the parent to care for the child ‘at the

time of the termination proceeding.’” In re L.O.K., 174 N.C. App. 426, 435, 621 S.E.2d

236, 242 (2005) (quoting In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984)).

When, however, as here, “a child has not been in the custody of the parent for a

significant period of time prior to the termination hearing, requiring the petitioner in

such circumstances to show that the child is currently neglected by the parent would

make termination of parental rights impossible.” Id. (internal quotation marks and

citation omitted). “In those circumstances, a trial court may find that grounds for

termination exist upon a showing of a history of neglect by the parent and the

probability of a repetition of neglect.” Id. (citation and internal quotation marks

omitted).

 2
 IN RE C.L.S.

 TYSON, J., dissenting

 In this case, while there was a prior adjudication of neglect, the sole party

responsible for the neglect was clearly the juvenile’s mother, not Respondent.

Respondent never had custody of the juvenile, and his paternity of the juvenile was

unknown until well after the adjudication of neglect. No evidence can support a

finding that Respondent had previously neglected C.L.S. Without any evidence,

much less the absence of clear, cogent and convincing evidence of prior neglect,

Petitioner utterly failed to show neglect at the time of the hearing. In re J.G.B., 177

N.C. App. 375, 382, 628 S.E.2d 450, 455 (2006).

 The majority’s opinion states “while incarceration may limit a parent’s ability

to show affection, it is not an excuse for [a parent’s] failure to show interest in a child’s

welfare by whatever means available, [because a] father’s neglect of his child cannot

be negated by incarceration alone.” (citing In re D.J.D., D.M.D., S.J.D., J.M.D., 171

N.C. App. 230, 240, 615 S.E.2d 26, 33 (2005)). This assertion is wholly inapplicable

and fallacious here, where the father was incarcerated one month after learning he

was a father. He was not provided any real opportunity to show interest in his child.

 I do not find the testimony of the Petitioner DSS’s social worker that after

Respondent was incarcerated he indicated he wished to enter a case plan, wanted his

attorney’s review and input before he signed, and that she never received it to be

clear, cogent or convincing evidence to support a failure “to provide love, support,

 3
 IN RE C.L.S.

 TYSON, J., dissenting

affection, and personal contact” to C.L.S. In re D.J.D., 171 N.C. App at 240, 615 S.E.2d

at 33.

 The trial court erred in concluding grounds existed under N.C. Gen. Stat. § 7B-

1111(a)(1) to terminate Respondent’s parental rights.

 After concluding termination based upon neglect was proper, the majority’s

opinion does not address the remainder of Respondent’s arguments. Since

termination based upon neglect was without any foundation, I address Respondent’s

remaining arguments.

 Failure to Make Reasonable Progress

 Respondent argues the trial court erred by concluding C.L.S. had been

“willfully left” in foster care or placement outside the home for more than twelve

months as set forth in N.C. Gen. Stat. § 7B-1111(a)(2).

 A trial court may terminate parental rights upon a finding that the parent,

“willfully left the juvenile in foster care . . . for more than 12 months without showing

. . . reasonable progress under the circumstances has been made in correcting those

conditions which led to the removal of the juvenile.” N.C. Gen. Stat. § 7B-1111(a)(2)

(2013). For the trial court to terminate for failure to make reasonable progress, DSS

must show that the parent had the ability to make progress but was “unwilling to

make the effort.” In re O.C. and O.B., 171 N.C. App. 457, 465, 615 S.E.2d 391, 396

(2005) (citation omitted).

 4
 IN RE C.L.S.

 TYSON, J., dissenting

 Here Respondent’s paternity of the juvenile was unknown both when DSS

initially filed its petition and when the juvenile was adjudicated neglected and

dependent. No evidence in the record shows Respondent was aware of his possible

paternity of the juvenile prior to these dates until May 2015. The petition to

terminate Respondent’s parental rights was filed 14 October 2014, five months later,

less than the statutorily required twelve months. As a consequence, and without any

clear, cogent and convincing evidence, the trial court erred by concluding C.L.S. had

been “willfully left” in foster care or placement outside the home for more than twelve

months as set forth in N.C. Gen. Stat. § 7B–1111(a)(2).

 Failure to Legitimate

 The trial court also erred in its conclusion that Respondent failed to establish

paternity or legitimate the child by any of the statutorily mandated methods. This

conclusion is unsupported by any finding of fact and supported by no clear, cogent or

convincing evidence.

 In its termination order, the trial court included a conclusory statement in its

FINDINGS OF FACT that DSS during the pretrial hearing had identified as a ground

for termination of parental rights “that Respondent-Father has failed to take steps to

legitimize the minor child.” The trial court makes no further findings regarding

Respondent and any failure to establish paternity or legitimate C.L.S. through any

of the means enumerated in N.C. Gen. Stat. § 7B-1111(a)(5).

 5
 IN RE C.L.S.

 TYSON, J., dissenting

 N.C. Gen. Stat. § 7B-1111(a)(5) authorizes termination where the father has

not prior to the petition:

 a. Filed an affidavit of paternity in a central registry
 maintained by the Department of Health and Human
 Services; provided, the petitioner or movant shall
 inquire of the Department of Health and Human
 Services as to whether such an affidavit has been so
 filed and the Department’s certified reply shall be
 submitted to and considered by the court. [or]

 b. Legitimated the juvenile pursuant to provisions of G.S.
 49-10, G.S. 49-12.1, or filed a petition for this specific
 purpose. [or]

 c. Legitimated the juvenile by marriage to the mother of
 the juvenile. [or]

 d. Provided substantial financial support or consistent
 care with respect to the juvenile and mother. [or]

 e. Established paternity through G.S. 49-14, 110-132,
 130A-101, 130A-118, or other judicial proceeding.

N.C. Gen. Stat. § 7B-1111(a)(5) (2013).

 The trial court must make specific findings of fact as to each subsection of N.C.

Gen. Stat. § 7B-1111(a)(5). In re I.S., 170 N.C. App. 78, 88, 611 S.E.2d 467, 473 (2005)

(emphasis supplied) (citing In re Harris, 87 N.C. App. 179, 188, 360 S.E.2d 485, 490

(1987)). The trial court’s conclusion that the ground for termination pursuant N.C.

Gen. Stat. § 7B-1111(a)(5) exists is not supported by the requisite findings based upon

clear, cogent and convincing evidence. The trial court’s conclusion that grounds

 6
 IN RE C.L.S.

 TYSON, J., dissenting

existed to terminate Respondent’s parental rights pursuant to N.C. Gen. Stat. § 7B-

1111(a)(5) is erroneous, and must be reversed.

 For all of these reasons, the majority’s opinion is wholly opposite to the

statutes and controlling case law. The trial court’s conclusion that statutory grounds

exist to terminate the parental rights of Respondent-father is not supported by clear,

cogent and convincing evidence. The trial court’s order is affected by reversible error

and should be reversed. I respectfully dissent.

 7