IN THE MATTER OF: THOMAS CLIFFORD WILLIAMS, DATE OF BIRTH: 02/03/1988

No. COA01-964

(Filed 7 May 2002)

## 1. Jurisdiction— subject matter—Indian Child Welfare Act

The trial court did not err in a termination of parental rights case by denying respondent inmate father's motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(1) based on an alleged lack of subject matter jurisdiction even though respondent contends the

trial court failed to satisfy the federal regulations governing juris-
diction over him since he is an American Indian, because
respondent has failed to satisfactorily show the Court of Appeals
that he is an American Indian entitled to the protection of the
Indian Child Welfare Act under 25 U.S.C.A. § 1912(f) when he
only made mention of his Indian heritage without providing any
supporting evidence such as documentation or the testimony of a
representative from his tribal government.

**2. Jurisdiction— personal—resident—minimum contacts**

The trial court did not err in a termination of parental rights
case by denying respondent inmate father's motion to dismiss
under N.C.G.S. § 1A-1, Rule 12(b)(2) based on an alleged lack
of personal jurisdiction even though respondent contends he is
not a resident of North Carolina and lacks minimum contacts
with this state, because: (1) although respondent acknowl-
edged paternity of the minor child, respondent did not take the
steps to legitimate the child or provide substantial financial
assistance; and (2) the trial court's assertion of personal jur-
isdiction over respondent did not offend traditional notions of
fair play and substantial justice since respondent failed to
demonstrate the commitment and ability to carry out his
parental responsibilities.

**3. Process and Service— sufficiency of service—inmate in
correctional institution**

The trial court did not err in a termination of parental rights
case by denying respondent inmate father's motion to dismiss
under N.C.G.S. § 1A-1, Rule 12(b)(5) based on alleged insuffi-
ciency of service of process, because: (1) copies of the summons
and complaint were sent by certified mail to the correctional
institution where respondent is an inmate in another state, and a
certified receipt was signed and returned to petitioner presum-
ably by a prison employee of suitable age and discretion author-
ized to sign the receipt on behalf of respondent; (2) eighteen days
after service, respondent filed a petition for appointment of coun-
sel; (3) this return receipt and respondent's filed petition show
sufficient compliance with N.C.G.S. § 1A-1, Rule 4 to raise a
rebuttable presumption fo valid service; and (4) respondent did
not rebut this presumption by showing he never received the
summons and complaint.

## 4. Termination of Parental Rights— motion for minor child to submit to mental examination—good cause not shown

The trial court did not err in a termination of parental rights case by denying respondent inmate father's N.C.G.S. § 1A-1, Rule 35(a) motion to have his minor child submit to a mental examination, because: (1) the trial court determined that the thirteen-year-old minor child was competent and of suitable age to testify about his feelings toward respondent; (2) there was no indication that the minor child's desires and opinions about terminating his father's parental rights were influenced by anyone associated with the Department of Social Services or would have been different had an independent medical evaluation been conducted; and (3) respondent failed to make a good cause showing that a mental examination of the minor child was necessary.

## 5. Termination of Parental Rights— minor child testifying in closed chambers—best interests of child

The trial court did not err in a termination of parental rights case by allowing the minor child to testify in closed chambers over respondent inmate father's objection, because: (1) respondent's interests were represented by his attorney in chambers; and (2) the court's assessment of what was in the minor child's best interests was reasonable.

## 6. Termination of Parental Rights— findings and conclusions—sufficiency of evidence

There was clear, cogent, and convincing evidence to support the trial court's findings and conclusions in a termination of parental rights case concerning respondent inmate father's willful abandonment of the minor child, as well as respondent's inability to provide filial affection, support, maintenance, financial assistance, and proper care and supervision to the minor child when taking into consideration the fact that respondent's current incarceration will likely continue for another twenty years.

Appeal by Eric Wildcat Hall ("respondent") from orders entered 12 March 2001 by Judge Douglas B. Sasser in Brunswick County District Court. Heard in the Court of Appeals 14 February 2002.

*Bonner Stiller & Associates, by Jason C. Disbrow, for petitioner-appellee Brunswick County Department of Social Services.*

*Michael T. Cox & Associates, by John Calvin Chandler, attorney advocate and guardian ad litem for the minor child.*

*Law Offices of Pauline Hankins, Inc., by Pauline Hankins, for respondent-appellant.*

CAMPBELL, Judge.

Thomas Clifford Williams ("Thomas") was born to respondent, Eric Wildcat Hall, and Theresa Marie Williams ("Theresa") on 3 February 1988 in the State of Pennsylvania. Respondent and Theresa were not married. Thomas was conceived in 1987 immediately following respondent's release from prison where he had been incarcerated as a result of several burglary convictions. Six weeks after his release, respondent was re-incarcerated as a result of convictions of armed robbery, burglary, attempted murder, and escape from a correctional facility. Respondent is currently incarcerated in the State Correctional Institution at Albion, Pennsylvania for these crimes and is serving a minimum mandatory sentence of approximately thirty-four years and a maximum sentence of approximately seventy-seven years.

Respondent admitted paternity of Thomas in April of 1991; however, he has never seen or spoken with Thomas since his birth. Respondent did send Thomas something less than twenty letters during the three years prior to September of 2000. Also, respondent has sent Thomas approximately $125 worth of gifts and monies during Thomas' lifetime. Respondent receives approximately $35-50 per month in wages through the Pennsylvania Department of Corrections for inmate labor, the entire amount of which is spent primarily on respondent's "necessities and postage and photocopy expenses."

In 1997, Theresa and Thomas moved to North Carolina. On 13 May 1999, Theresa's parental rights were terminated. Thereafter, Thomas was placed in the custody of the Brunswick County Department of Social Services (the "Department"). During Thomas' first eighteen months in the care and custody of the Department, he was in two relative placements, in a group home, in at least two foster placements and in a teen shelter. Prior to Christmas 2000, Thomas was once again placed in foster care.

On 28 September 2000, the Department simultaneously filed a summons and petition to terminate respondent's parental rights. Respondent, in turn, filed a petition for appointment of counsel on 24

October 2000 and was appointed counsel on 14 November 2000. On 29 November 2000, the trial court ordered a writ be issued directing respondent be transported to the Brunswick County Detention Facility. On 7 December 2000, respondent filed an amended answer/motions to dismiss and motion for transportation. The motions to dismiss were denied on 13 December 2000, but the motion for transportation was allowed. Respondent's answer was filed on 2 January 2001. On 5 February 2001, respondent filed a motion to have the minor child examined by a licensed psychologist, but this motion was denied.

The case was heard on 5 February 2001 in Brunswick County District Court, Judge Douglas B. Sasser presiding. During the hearing, respondent admitted that his incarceration prevented him from being able to care for his son without the assistance of his parents. The Department had initially investigated the possibility of placing Thomas with respondent's parents, but deemed such placement unreasonable. The court found that respondent had no knowledge of his parents ever seeing or speaking with Thomas and that his parents had failed to appear in court despite being notified of the hearing. The court also found:

20. That the Respondent has failed to pay a reasonable portion of the costs of the juvenile's care in that he has failed to pay any money to the Brunswick County Department of Social Services despite knowing that the juvenile was in their care, custody and control.

. . .

29. . . . Respondent [was] incapable of providing for the proper care and supervision of the juvenile since the juvenile [was] a dependent juvenile . . . and that there [was] a reasonable probability that such incapability will continue for the perceivable future.

30. . . . Respondent [had] willfully left the juvenile in foster care or placement outside the home for more than twelve (12) months without showing to the satisfaction of the Court that reasonable progress under the circumstances [had] been made in twelve (12) months in correcting [the] condition which led to the removal of the juvenile.

31. That the Respondent has failed to take such action in regards to the juvenile as to display sufficient filial affection

and to properly provide reasonable support and maintenance for the juvenile.

Based on these findings of fact, the court concluded that sufficient grounds existed for the termination of respondent's parental rights pursuant to Sections 7B-1111(a)(6) and 7B-1111(a)(2) of our statutes, as set forth in Findings of Fact 29 and 30, respectively.

Respondent brings forth several assignments of error, many of which are identical. For the following reasons, we affirm the trial court's orders.

I.

[1] Respondent begins by assigning error to the trial court's denial of his motion to dismiss based on Rule 12(b)(1) of our rules of civil procedure for lack of subject matter jurisdiction. Specifically, respondent argues that since he is an American Indian, the trial court failed to satisfy the federal regulations governing jurisdiction over him. We disagree.

Pursuant to the Indian Child Welfare Act ("Act"):

No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C.A. § 1912(f) (2002). This provision creates a dual burden of proof in which:

The state grounds for termination must be supported by clear and convincing evidence, while the federal law requires evidence which justifies termination beyond a reasonable doubt. To meet the federal requirement, the trial court must conclude beyond a reasonable doubt that continued custody by the parent is likely to result in serious emotional or physical damages to the child.

*In re Bluebird*, 105 N.C. App. 42, 47-48, 411 S.E.2d 820, 823 (1992) (citation omitted).

Respondent contends that since he is an American Indian, the court erred in basing its order solely on state grounds and not on the

dual burden imposed by the Act. However, respondent has not satisfied us that he is an American Indian entitled to the Act's protection. The Nebraska Supreme Court has held that "a party to a proceeding who seeks to invoke a provision of the . . . Act has the burden to show that the [A]ct applies in the proceedings." *See In re Interest of J.L.M.*, *451 N.W.2d 377, 396 (Neb. 1990).* Since it appears our Court has never addressed this particular issue, we choose to adopt this Nebraska holding and apply it to the present case. In doing so, we note that respondent only makes mention of his "Indian" heritage in his 7 December 2000 motions to dismiss and during petitioner's cross-examination of him.[1] Respondent fails to provide any supporting evidence to prove the Act's applicability to him, such as documentation or the testimony of a representative from his tribal government. *See id.* (stating that these are two methods of proving tribal membership). Although we acknowledge that there may be other methods by which a party can prove that the Act applies, this equivocal testimony of the party seeking to invoke the Act, standing alone, is insufficient to meet this burden. Thus, we reject this assignment of error.

## II.

**[2]** Secondly, respondent assigns as error the trial court's denial of his Rule 12(b)(2) motion to dismiss based on lack of personal jurisdiction, arguing that he is not a resident of North Carolina and lacks minimum contacts with this state. We disagree.

Generally, a nonresident defendant is subject to personal jurisdiction in North Carolina if: "(1) [O]ur legislature has authorized our courts to exercise personal jurisdiction over the defendant in the action, (2) the plaintiff has properly notified the defendant of the action, and (3) the defendant has 'minimum contacts' with this State." *Harris v. Harris*, 104 N.C. App. 574, 577, 410 S.E.2d 527, 529 (1991). The minimum contacts requirement "protects a person's due process rights by insuring that maintenance of a suit does not 'offend traditional notions of fair play and substantial justice.' " *In re Dixon*, 112 N.C. App. 248, 250, 435 S.E.2d 352, 353 (1993) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945)).

Nevertheless, in some circumstances " 'fair play and substantial justice' do not necessitate minimum contacts with the forum state or

---

1. When asked his "nationality" during cross-examination, respondent testified that it was "Native American and Caucasian."

notice to the party." *Id.* at 251, 435 S.E.2d at 353. One such circumstance has been found in the context of a termination of parental rights proceeding filed against the father of a child born out of wedlock. In the case of *In re Dixon*, 112 N.C. App. 248, 435 S.E.2d 352 (1993), this Court held that a non-resident father's parental rights can be terminated in the absence of minimum contacts with North Carolina if the child is born out of wedlock and the father has failed to establish paternity, legitimate his child, or provide substantial financial assistance or care to the child and mother. *Id.* at 251, 435 S.E.2d at 354. *See also* N.C. Gen. Stat. § 7B-1111(a)(5) (1999) (previously listed as N.C. Gen. Stat. § 7A289.32(6) (Supp. 1992)). We reasoned that "a father's constitutional right to due process of law does not 'spring full-blown from the biological connection between parent and child' but instead arises only where the father demonstrates a *commitment* to the responsibilities of parenthood." *Dixon*, 112 N.C. App. at 251, 435 S.E.2d at 354 (quoting *Lehr v. Robertson*, 463 U.S. 248, 260, 77 L. Ed. 2d 614, 626 (1983)) (emphasis added). Here, respondent acknowledged paternity of Thomas, but did not take the steps to legitimate the child or provide substantial financial assistance.

Section 7B-1111 of our statutes, which establishes grounds for terminating parental·rights, is used to determine a putative father's commitment to his child. *See* § 7B-1111. Here, the trial court's order concluded that "sufficient grounds exist[ed] for the termination of the Respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(2) & (6)." This conclusion was supported by findings that showed that during Thomas' lifetime, respondent has never had a custodial relationship with the child nor has he had any significant personal or financial relationship with the child other than an occasional letter and a total of $125 in monies and gifts. Their father-son relationship is unlikely to change in the foreseeable future due to respondent's lengthy incarceration and Thomas' unwillingness to see him. Additionally, respondent's only alternative for providing for the proper care and supervision of Thomas is through the assistance of his parents, who have had absolutely no relationship with the child and even failed to attend respondent's termination of parental rights hearing. Therefore, despite respondent's lack of minimum contacts with our state, we find that the trial court's assertion of personal jurisdiction over him did not offend "traditional notions of fair play and substantial justice" because he failed to demonstrate the commitment and ability to carry out his parental responsibilities.

### III.

**[3]** By respondent's next assignment of error he argues the district court erred in denying his Rule 12(b)(5) motion to dismiss because of insufficiency of service of process. We disagree.

Rule 4 provides the procedure by which a party can overcome a Rule 12(b)(5) motion to dismiss for insufficiency of process. *See* N.C. Gen. Stat. § 1A-1, Rule 4 (1999). In pertinent part, Rule 4 states that the "manner of service of process within or without the State shall be . . . [b]y mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee." § 1A-1, Rule 4(j)(1)(c). This provision of Rule 4:

> [C]ontemplates merely that the registered or certified mail be delivered to the address of the party to be served and that a person of reasonable age and discretion receive the mail and sign the return receipt on behalf of the addressee.

> A showing on the face of the record of compliance with the statute providing for service of process raises a rebuttable presumption of valid service.

*Lewis Clarke Associates v. Tobler*, 32 N.C. App. 435, 438, 232 S.E.2d 458, 459 (1977) (citation omitted).

In the case *sub judice*, copies of the summons and complaint were sent by certified mail to the correctional institution where respondent is an inmate. A certified receipt was signed and returned to petitioner presumably by a prison employee of suitable age and discretion authorized to sign the receipt on behalf of respondent. Eighteen days after service, respondent filed a petition for appointment of counsel. This return receipt and respondent's filed petition show sufficient compliance with Rule 4 to raise a rebuttable presumption of valid service. Respondent did not rebut this presumption by showing he never received the summons and complaint. *See id.* Thus, we find that defendant was sufficiently served with process.

### IV.

Respondent raises two assignments of error relating to the testimony given by his son, Thomas.

**[4]** First, respondent takes issue with the court's denial of his motion to have Thomas examined pursuant to Rule 35. Rule 35 states that a

judge may order a party to submit to a mental examination upon a showing of good cause when the mental condition of a party is in controversy. *See* N.C. Gen. Stat. § 1A-1, Rule 35(a) (1999). Here, respondent believed Thomas should have been evaluated by an expert who was not employed by or directly connected with the Department so that the child could be fairly evaluated by someone without any preconceived ideas and beliefs against respondent. The court determined that since Thomas was thirteen years old at the time of the hearing, he was competent and of suitable age to testify about his feelings towards respondent. There was no indication in the record or trial transcript that Thomas' desires and opinions about terminating his father's parental rights were influenced by anyone associated with the Department or would have been different had an independent medical evaluation been conducted. Accordingly, respondent failed to make a good cause showing that a mental examination of Thomas was necessary.

**[5]** Respondent also takes issue with the court allowing Thomas to testify in closed chambers over his objection. Respondent argues his attorney was unable to examine Thomas because the court prevented the child from testifying in open court. This argument is completely without merit. The court deemed it was in Thomas' best interests not to have respondent present in chambers during its questioning of the child because Thomas had never seen his father before and felt that seeing respondent at trial would "probably" upset him. Nevertheless, the court did allow all three attorneys, including respondent's attorney, to be present in chambers and gave each attorney ample opportunity to question Thomas. Since respondent's interests were represented by his attorney in chambers and the court's assessment of what was in Thomas' best interests was reasonable, we find no error.

V.

**[6]** In his remaining assignments of error, respondent argues that the court's findings of facts (and related conclusions of law) listed previously were based on insufficient evidence. These findings specifically relate to respondent's willful abandonment of Thomas, as well as his inability to provide filial affection, support, maintenance, financial assistance, and proper care and supervision to Thomas. After a thorough review of the record and trial transcripts in this case, including taking into consideration the fact that respondent's current incarceration will likely continue for another twenty years (the time remain-

ing on his minimum mandatory sentence), we find that there was sufficient clear, cogent, and convincing evidence to support the trial court's findings and conclusions.

Thus, for the aforementioned reasons, we hold that the trial court did not err in terminating respondent's parental rights.

Affirmed.

Judges MARTIN and HUDSON concur.