IN THE MATTER OF: J.C.D.
No. COA08-116.
Court of Appeals of North Carolina.
Filed June 17, 2008.
This case not for publication
Theresa A. Boucher, Assistant Forsyth County Attorney, for petitioner-appellee Forsyth County Department of Social Services.
Carrie A. Hanger for Guardian ad Litem.
Charlotte Gail Blake for respondent-appellant.
MARTIN, Chief Judge.
Respondent appeals from a judgment terminating her parental rights as the mother of J.C.D. We affirm.
J.C.D. was born on 23 July 1993. On 26 May 2005 the Forsyth County Department of Social Services ("DSS") filed petitions alleging that J.C.D. and his two brothers were neglected juveniles. The same day the trial court granted nonsecure custody of J.C.D. and his brothers to DSS. On 17 October 2005 the trial court adjudicated J.C.D. a dependent juvenile and ordered that he remain in the custody of DSS. On 7 February 2007 at a permanency planning hearing the court changed the permanent plan for J.C.D. from reunification to adoption. On 5 April 2007 DSS filed a petition to terminate the parental rights of both J.C.D.'s parents, and a hearing on the matter was held on 1 October 2007. The court found that respondent abused and neglected J.C.D. and that J.C.D.'s father had abandoned him. The court terminated the parental rights of both respondent and father in an order entered 1 October 2007. Respondent appeals.
Respondent argues that the trial court erred in terminating her parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (2007) on the grounds of neglect because it considered evidence of past neglect and not current conditions. One's parental rights to a juvenile may be terminated pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) if one has neglected the juvenile. A neglected juvenile is one who "does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare . . .." N.C. Gen. Stat. § 7B-101(15) (2007). Termination of one's parental rights on the ground of neglect must be based on conditions in existence at the time of the termination hearing and may not be based solely upon conditions existent in the past. In re Ballard, 311 N.C. 708, 714-16, 319 S.E.2d 227, 231-32 (1984). "[I]n determining whether neglect has occurred, the trial judge may consider the parent's failure to provide the personal contact, love, and affection that inheres in the parental relationship." Whittington v. Hendren (In re Hendren), 156 N.C. App. 364, 368, 576S.E.2d 372, 375-76 (2003); see also In re Williams, 149 N.C. App. 951, 563 S.E.2d 202 (2002) (upholding termination of parental rights of incarcerated father on the basis of his failure to show filial affection for his child and the child's unwillingness to see his father). On appeal, "[o]ur standard of review for the termination of parental rights is whether the court's `findings of fact are based upon clear, cogent and convincing evidence' and whether the `findings support the conclusions of law.'" In re Pope, 144 N.C. App. 32, 40, 547 S.E.2d 153, 158 (2001), aff'd, 354 N.C. 359, 554 S.E.2d 644 (2001) (quoting In re Huff, 140 N.C. App. 288, 292, 536 S.E.2d 838, 840 (2000), disc. rev. denied, 353 N.C. 374, 547 S.E.2d 9 (2001)).
Here, the trial court made the following findings of fact:
9. When [J.C.D.] lived in the homes of his parents and then mother after his paren[ts'] separation, the home was unclean with rats and insects in the home and trash and clutter everywhere. [J.C.D.] would often urinate in his bed and was not trained to get up and go to the bathroom. Clean bedding was not provided for him after he urinated in the bed.
10. Prior to his removal to foster care, [J.C.D.] and his siblings were "wild[,]" undisciplined and lived like animals without discipline or supervision or a minimal standard of care in the home of their mother[.]
. . .
13. Even though [J.C.D.] has expressed that he does not want personal contact with his parents, there is no evidence that [respondent and father] tried to maintain contact with their son or of any efforts to rebond with [J.C.D.] in that manner that they have done with their younger two sons . . . . There is no bond between [respondent and father] and [J.C.D.]
14. Since his removal by Forsyth County DSS, [respondent] has continued to neglect [J.C.D.] She has failed to foster love and contact with him and has failed to demonstrate to the juvenile love, affection, and personal contact. In spite of [J.C.D.] indicating his desire to have no contact with his parents the Juvenile Court continued to provide [respondent with] a means of demonstrating a commitment to her son which she failed to take advantage of.
. . .
17. [Respondent] provided cards, gifts and personal contact for her other two children in foster care but failed to demonstrate the same for [J.C.D.]
The findings regarding conditions six months prior to the termination are fully supported by the record and by testimony from respondent herself. Findings of fact 13, 14, and 17 are supported by competent evidence in the form of testimony by two foster care social workers and respondent herself. One social worker testified that in the six months prior to the termination of parental rights hearing, she had spoken to respondent many times and respondent had not asked about J.C.D., had not expressed a desire to see him, visit with him, or have him back in her home, and had not expressed care or concern for him. Respondent testified that she knew she could approach the social worker in the year prior to the hearing to try and repair her relationship with J.C.D. but did not do so. She also testified that the reason J.C.D. was in foster care was because he chose to be in foster care. Respondent also testified that at a Permanency Planning Action Team meeting approximately two months prior to the hearing she stated that she did not want J.C.D.back in her home. Another social worker testified that she encouraged respondent to ask the court to order family therapy for herself and J.C.D.; there is no evidence in the record that respondent did so. Thus, the record indicates that respondent failed to provide proper care, supervision, personal contact, love, and affection in the months prior to the termination hearing, which supports the trial court's finding that grounds for termination exist pursuant to N.C. Gen. Stat. § 7B-1111(a)(1).
Respondent next argues that the trial court erred in terminating her parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (2007) on the grounds of abuse because there was no evidence of abuse. We have already determined that grounds existed for termination of respondent's parental rights on the ground of neglect, so we need not consider this assignment of error. See In re Baker, 158 N.C. App. 491, 493, 581 S.E.2d 144, 146 (2003) (holding that a finding of any one of the grounds for termination of parental rights enumerated in N.C. Gen. Stat. § 7B-1111(a) is sufficient to support termination).
Affirmed.
Judges CALABRIA and STROUD concur.
Report per Rule 30(e).