IN THE MATTER OF: T.C.N.M.
No. COA09-1121.
Court of Appeals of North Carolina.
Filed March 2, 2010.
This case not for publication
R. Scott Lindsay for petitioner-appellee Cherokee County Department of Social Services.
Patricia Kay Gibbons for respondent-appellant father. Pamela Newell Williams for guardian ad litem.
ELMORE, Judge.
Respondent-father[1] appeals from adjudication and disposition orders terminating his parental rights to his daughter, T.C.N.M. (Tara).[2] After careful review, we affirm the decision of the Cherokee County District Court.
The Cherokee County Department of Social Services (DSS) became involved in the instant case after Tara tested positive for marijuana and methadone at her birth in January 2007. Respondent-mother admitted to using both drugs during the pregnancy. On 8 January 2007, DSS filed a juvenile petition alleging that Tara was abused and neglected. DSS was granted non-secure custody on the same day and Tara was placed in foster care. The trial court adjudicated Tara neglected on 29 May 2007, based on the consent of the parents. In the consent order, both parents admitted to using controlled substances. The parents also admitted to leaving Tara with a relative and failing to supervise her.
In March 2007, DSS entered into case plans with both parents to work on the issues which led to Tara's removal. Under respondent-father's case plan, he agreed to the following conditions: (1) obtain a substance abuse assessment, (2) follow the recommendations of the assessment, (3) keep DSS informed of his disability claim, and (4) refrain from using alcohol or controlled substances. Respondent-father obtained a substance abuse assessment on 11 April 2007. The assessment recommended that he attend parenting classes and substance abuse classes. DSS also asked respondent-father to participate in drug screens to determine whether he was refraining from using controlled substances.
Over the course of the next year, both parents made some progress on their case plans. However, much of the progress was not made until the spring and summer of 2008. After starting and stopping parenting classes twice, respondent-father received a completion certificate on 18 July 2008. He entered substance abuse classes on three occasions, and, on his third attempt, completed the classes on 22 April 2008. Despite completing the classes, respondent-father did not successfully demonstrate that he was no longer using controlled substances. DSS requested five drug screens between August and December 2007, and respondent-father refused four of them; the one that he submitted to was negative. Respondent-father volunteered for three drug screens. One was negative and the other two were invalid. Respondent-father also participated in a drug screen on 4 April 2008, which was positive for benzodiazepines, opiates, methadone, and marijuana. Respondent-father was also required to attend case plan meetings, but attended only one of the eight that were scheduled. In December 2007, the couple had a second child, Trent, who also tested positive for controlled substances at his birth. Trent was taken into nonsecure custody by DSS and was adjudicated neglected on or about 19 March 2008.
The trial court authorized supervised visitation with both Tara and Trent once per week. However, in the year from July 2007 to July 2008, respondent-father visited Tara seventeen times. After 4 August 2008, neither parent visited with Tara, and, on 12 November 2008, the trial court ceased visitation due to the lack of participation by the parents.
According to DSS records, respondent-father has lived with his mother during the entire time that Tara has been in DSS custody.[3] Respondent-father has a limited education. He finished school through the tenth grade, but is illiterate. Respondent-father was not employed at any time during the relevant time period, but has been pursuing a social security disability claim based on back pain and having a pin in his arm. The claim originally was denied, but respondent-father appealed the denial. He has not provided DSS with any medical documentation regarding the details of his disability claim.
On 1 July 2008, DSS filed a petition to terminate both parents' parental rights to Tara, alleging the following grounds: (1) neglect, (2) willfully leaving the juvenile in foster care for more than twelve months without showing reasonable progress to correct the conditions that led to removal, (3) willful failure to pay a reasonable portion of the cost of care for the juvenile for the six-month period preceding the filing of the petition despite being physically and financially able to do so, and (4) willful abandonment. Respondent-father filed an answer denying the material allegations of the petition, along with a motion to dismiss the petition.
The termination hearing was held on 6 and 7 April 2009. Both parents attended the hearing. DSS called two witnesses to testify at the hearing. Social worker Carol Smith, who took over Tara's case in approximately May 2007, testified regarding the parents' compliance with their case plans, their visitation with Tara, and other matters pertinent to the case. Next, Donna Pendergrass, a DSS supervisor, testified regarding the department's drug testing policies. Respondent-father did not present any evidence. Following the adjudication portion of the hearing, DSS admitted that it did not present any evidence as to the support ground and therefore abandoned it. Additionally, the trial court concluded that DSS failed to carry its burden as to the abandonment ground and dismissed it. In an adjudication order entered 7 May 2009, the trial court found the existence of the remaining grounds for termination: (1) neglect and (2) willfully leaving the juvenile in foster care for more than twelve months without showing reasonable progress to correct the conditions that led to removal.
Following the adjudication portion of the hearing, the trial court continued disposition to 7 May 2009 in order for the parents to prepare evidence. When the May 2009 proceedings began, neither parent was present. Counsel for each parent requested a second continuance based on the parents' absences, which the court denied. Following the hearing, the trial court entered an order on 5 June 2009, determining that termination of parental rights was in Tara's best interest. The court ordered both parents' parental rights to Tara be terminated. From this order, respondent-father appeals.

I.
Respondent-father first argues that the trial court erred by denying his motion to continue the disposition hearing. We review the trial court's denial of a motion to continue for an abuse of discretion. In re Humphrey, 156 N.C. App. 533, 538, 577 S.E.2d 421, 425 (2003). "Generally, the denial of a continuance, which is within the trial court's sound discretion, will not be interfered with on appeal; however, if the ruling is manifestly unsupported by reason, it is an abuse of discretion and subject to reversal." In re Safriet, 112 N.C. App. 747, 751, 436 S.E.2d 898, 901 (1993) (quotations and citation omitted).
After reviewing the record, we conclude that the trial court's denial of respondent-father's motion to continue was supported by reason. In denying the motions to continue, the trial court explained:
Motions are denied. And I would like the fact that their attorneys made the motions and the fact that I am denying it[,] that both parties knew to be present, that the disposition was put over for them specifically for them to, to be able to present evidence at disposition and that neither party appeared.
Here, respondent-father had already been given one month-long continuance in order for the parties to prepare evidence for the disposition hearing. As the trial court acknowledged, respondent-father was aware of the date of the disposition hearing because he attended the adjudication portion of the termination hearing; after giving its ruling as to adjudication, the trial court granted the parents' first motions to continue, and scheduled the disposition hearing for 7 May 2009.
Respondent-father contends that the trial court abused its discretion because he was not present at the hearing and was unable to testify that DSS used an incorrect address to serve him with documents related to the applicability of the Indian Child Welfare Act. However, as we explain in section III, we do not believe that the Indian Child Welfare Act applies to Tara. Moreover, DSS had been operating under the assumption that respondent-father lived in the same residence that he had been living in for the pendency of the case, and respondent-father did not notify them of his new address and did not introduce evidence to the contrary at the hearings. Finally, he was aware of the hearing date and had the opportunity to present evidence, but chose not to attend the hearing. Thus, we hold that the trial court provided a reasoned explanation for its ruling and conclude that it did not abuse its discretion by denying respondent-father's motion to continue.

II.
Next, respondent-father argues that the trial court erred by failing to appoint a guardian ad litem for respondent-father, pursuant to N.C. Gen. Stat. § 7B-1101.1(c) (2009). This statute provides, in relevant part:
On motion of any party or on the court's own motion, the court may appoint a guardian ad litem for a parent . . . if the court determines that there is a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest[.]
Id. "A trial judge has a duty to properly inquire into the competency of a litigant in a civil trial or proceeding when circumstances are brought to the judge's attention, which raise a substantial question as to whether the litigant is non compos mentis." In re C.G.A.M., ___ N.C. App. ___, ___, 671 S.E.2d 1, 4 (2008) (quotations and citation omitted). Whether to conduct such an inquiry is within the sound discretion of the judge. Id.
Here, we conclude that the trial court did not abuse its discretion by not appointing a guardian ad litem ex mero motu. Respondent-father argues that the trial court should have appointed a guardian ad litem because there was a reasonable basis for it to find that respondent-father had diminished capacity. Respondent-father bases this claim on his limited education, illiteracy, and substance abuse. However, we have previously stated "the trial court is not required to appoint a guardian ad litem in every case where substance abuse or some other cognitive limitation is alleged." In re J.A.A. & S.A.A., 175 N.C. App. 66, 71, 623 S.E.2d 45, 48 (2005) (quotations and citation omitted). Here, though we acknowledge that the trial court certainly was on notice of respondent's limited education and drug use history, it is not apparent that he was unable to adequately act in his own interest. Nothing in the proceedings raised the question of respondent-father's competency; throughout the juvenile proceedings, respondent-father demonstrated sufficient competency to complete parenting and substance abuse classes, file a social security disability claim, attend and participate in the adjudication hearing, and enter into a consent order regarding Tara's adjudication. Based on the foregoing, we conclude that the trial court did not abuse its discretion in failing to appoint a guardian ad litem ex mero motu for respondent-father.

III.
Next, respondent-father argues that the trial court erred by finding as fact that the Indian Welfare Act (the Act) did not apply to Tara. We disagree. Congress passed the Indian Child Welfare Act (the Act) for the purpose of protecting "the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian Children from their families[.]" 25 U.S.C. § 1902 (2009). Among other things, the Act establishes certain procedures with respect to state child custody actions involving Indian children who do not reside in or are not domiciled within a tribe's reservation. 25 U.S.C. § 1912(a) (2009). The Act requires that notice be given to the tribe if the State seeks foster care placement or termination of parental rights of an Indian child. Id. It also allows a tribe to intervene at any point in such an action. 25 U.S.C. § 1911(c) (2009). The Act further provides that, even after the conclusion of the proceedings, the tribe "may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated" the sections of the Act which outline procedural requirements. 25 U.S.C. § 1914 (2009).
However, "in order for the Act to apply, a proceeding must first be determined to be a child custody proceeding as defined by the Act itself, and it must then be determined that the child in question is an Indian child of a federally recognized tribe." In re C.P., L.P., & N.P., 181 N.C. App. 698, 701, 641 S.E.2d 13, 16 (2007) (citation omitted). Here, it is undisputed that the proceeding was a child custody proceeding. Respondent-father argues that Tara is an "Indian child," thereby triggering the Act. The Act defines an "Indian child" as "an unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 U.S.C. § 1903(4) (2009). "The burden is on the party invoking the Act to show that its provisions are applicable to the case at issue, through documentation or perhaps testimony from a tribe representative." In re C.P. at 701-02, 641 S.E.2d at 16. We have held that the "equivocal testimony of the party seeking to invoke the Act, standing alone, is insufficient to meet this burden." In re Williams, 149 N.C. App. 951, 957, 563 S.E.2d 202, 205 (2002). In Williams, the respondent testified that his nationality was "Native American and Caucasian." Id. n.1.
Here, the 30 June 2008 TPR petition alleged that the Act did not apply to Tara. In her answer, Tara's mother admitted that the Act did not apply to Tara. However, in respondent-father's answer, he denied the petition's allegation that the Act did not apply to Tara. Respondent-father also filed a motion to dismiss, alleging that DSS "failed to make a determination to see if the minor child in this matter would be protected under the Indian Child Welfare Act." In its adjudication order, the trial court found as fact that the Act did not apply to Tara. In its termination order, the trial court again found as fact that the Act did not apply to Tara. Despite denying DSS's allegation that the Act did not apply to Tara and basing a motion to dismiss on a claim that DSS should have determined whether the Act applied to Tara, respondent-father submitted no evidence supporting the Act's application to Tara. Tara's birth certificate lists both parents' races as "white." Respondent-father did not testify at either hearing and the only evidence heard that offered additional information relevant to the Act's application to Tara was elicited on cross-examination from a DSS employee. At the adjudication hearing, Ms. Smith testified that respondent-father had told her that "he has some Indian in him, Cherokee Indian" and that "he has enough that he qualifies for the free medical assistance at the Cherokee hospital." At the disposition hearing, Ms. Smith testified that respondent-father's mother lived in a home on "Indian property," although she did not "understand totally who owns it. . . . [H]is mother is allowed to live there and . . . she is the . . . one who is responsible for the property."
Here, respondent-father did not testify that he was Native American, as the respondent in Williams did. He did not testify at all and offered no other evidence that he was Native American. The only evidence to support this claim came in the form of hearsay by a DSS employee. In addition, he did not challenge on appeal the trial court's adjudicatory finding of fact that the Act did not apply to Tara. We hold that respondent-father did not satisfy his burden of demonstrating to the trial court that the Act applies to Tara. Accordingly, the trial court properly found as fact that the Act does not apply to the juvenile and properly declined to invoke the Act's procedural safeguards in this case.

IV.
Next, we turn to respondent-father's argument regarding the trial court's findings of fact and conclusions of law in the adjudicatory termination of parental rights order. Respondent-father argues that the trial court erred by concluding that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111 to terminate his parental rights. Pursuant to N.C. Gen. Stat. § 7B-1111(a) (2009), a trial court may terminate parental rights upon a finding of one of the ten enumerated grounds. "So long as the findings of fact support a conclusion [that one of the enumerated grounds exists,] the order terminating parental rights must be affirmed." Humphrey, 156 N.C. App. at 540, 577 S.E.2d at 426 (citation omitted). Here, the trial court found that two grounds existed to terminate respondent-father's parental rights to Tara: (1) neglect and (2) willfully leaving the juvenile in foster care for over twelve months without showing reasonable progress in correcting the conditions which led to the removal. Although respondent-father challenges both grounds for termination, "[a] single ground . . . is sufficient to support an order terminating parental rights." In re J.M.W., E.S.J.W., 179 N.C. App. 788, 789, 635 S.E.2d 916, 917 (2006) (footnote omitted). Therefore, if we determine that the findings of fact support one of the grounds, we need not review the other ground. See Humphrey, 156 N.C. App. at 540, 577 S.E.2d at 426-27.
On appeal, we review the trial court's orders to determine "whether the trial court's findings of fact were based on clear, cogent, and convincing evidence, and whether those findings of fact support a conclusion that parental termination should occur." In re Oghenekevebe, 123 N.C. App. 434, 435-36, 473 S.E.2d 393, 395 (1996) (citation omitted). As an initial matter, we note that although respondent-father assigned error to several adjudicatory findings of fact, he did not argue them in his brief. Because respondent-father has not argued his assignments of error on the adjudicatory findings of fact, we must deem these assignments of error abandoned. In re Bishop, 92 N.C. App. 662, 664, 375 S.E.2d 676, 678 (1989) (citing N.C.R. App. P. 28(b)(5)). Therefore, the trial court's findings of fact are binding on appeal, and we are left to determine whether the court's adjudicatory findings support its conclusions of law. See Humphrey, 156 N.C. App. at 540, 577 S.E.2d at 426.
After reviewing the record, we find that the trial court's unchallenged findings of fact are sufficient to support the conclusion that grounds for termination exist pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). This ground for termination requires the trial court to find that the parent willfully left the juvenile in foster care for over twelve months and that the parent has not made reasonable progress to correct the conditions which led to the removal of the juvenile. In re O.C. & O.B.C., 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396 (2005). Moreover, "[a] finding of willfulness does not require a showing of fault by the parent." Oghenekevebe, 123 N.C. App. at 439, 473 S.E.2d at 398 (citation omitted).
First, we find that Tara had been in foster care for the requisite period of time. We have previously held that the term "for more than 12 months" in N.C. Gen. Stat. § 7B-1111(a)(2) refers to the duration of time beginning with the child's removal from the home pursuant to a court order and ending with the termination petition or motion. In re A.C.F., 176 N.C. App. 520, 526, 626 S.E.2d 729, 734 (2006). Tara was removed from her parents on or about 8 January 2007 pursuant to a nonsecure custody order, and DSS filed the motion to terminate parental rights approximately 18 months later, on 1 July 2008.
Next, we turn to respondent-father's progress on correcting the conditions which led to removal. Here, Tara was originally taken from her parents' custody because she tested positive for controlled substances at birth. Although Tara's condition at birth implied substance abuse by her mother, respondent-father also admitted to using controlled substances. Additionally, both parents admitted to leaving their children with a relative and to failing to supervise their children.
The factual background, which is largely based on the trial court's undisputed findings of fact, outlines respondent-father's attempts to make progress towards correcting the conditions which led to removal. We acknowledge that respondent-father did complete his assessment, and eventually completed parenting classes and substance abuse classes. Thus, the record reveals that respondent-father made some attempts to correct the conditions which led to removal. Nonetheless, we find that his progress was limited, and limited attempts do preclude a finding that grounds for termination exist. See Oghenekevebe, 123 N.C. App. at 437, 473 S.E.2d at 396-97 (finding grounds existed to terminate respondent's parental rights and noting that respondent failed to show any progress until her parental rights were in jeopardy).
Given the totality of the circumstances, the record supports a finding that respondent-father did not make reasonable progress to correct the conditions which led to removal. The findings of fact establish that respondent-father failed to demonstrate that he was drug-free, based on his pattern of refusing to take drug screens. Respondent-father refused to take drug screens on approximately half of the occasions when such screens were requested.
Moreover, respondent-father failed in other respects. The findings of fact establish that respondent-father showed little interest in visiting Tara. He attended fewer than half of the weekly visits scheduled with Tara. After August 2008, respondent-father stopped visiting Tara altogether. Based on the sporadic visitation, the trial court ceased his visitation rights. Although respondent-father now claims that he did not have adequate transportation to visit Tara, he did not introduce any evidence at the hearing attempting to justify his failure to regularly visit his daughter. Finally, respondent-father has not made any attempt to demonstrate that he is able to provide care, supervision, and support for Tara. At the time of the hearing, he was not employed and had not lived independently during the pendency of Tara's case. Respondent-father's only potential for income came from a social security disability claim, and he was unable to provide DSS with any medical documentation concerning the claim.
Additionally, respondent-father's limited progress was, in part, untimely. After several starts and stops, he did not finish his parenting and controlled substance classes until after he was in jeopardy of losing Tara. See id. (finding grounds existed to terminate the respondent's parental rights and noting that the respondent failed to show any progress until her parental rights were in jeopardy). Respondent-father did not complete his substance abuse classes until 22 April 2008, which is three weeks after the 1 April 2008 review hearing at which the trial court authorized DSS to file a termination of parental rights petition. He did not finish parenting classes until 18 July 2008, which is two-and-a-half weeks after DSS filed the petition. Based on our review of the record, we hold that the trial court properly concluded that respondent-father willfully left Tara in a placement outside the home for more than twelve months prior to filing the petition without showing to the satisfaction of the trial court that reasonable progress had been made in correcting the conditions which led to removal of the child.

V.
Next, we turn to respondent-father's argument that the trial court improperly concluded that it was in Tara's best interest to terminate respondent-father's parental rights. After an adjudication determining that grounds exist for terminating parental rights, a trial court is required to consider the following factors when determining whether termination is in a juvenile's best interest:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a) (2009). We review the trial court's determination that a termination of parental rights is in the best interest of the juvenile for an abuse of discretion. In re Anderson, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002). "Abuse of discretion exists when the challenged actions are manifestly unsupported by reason." Barnes v. Wells, 165 N.C. App. 575, 580, 599 S.E.2d 585, 589 (2004) (quotations and citation omitted).
In its disposition order, the trial court made the following findings of fact, among others, regarding the criteria listed in N.C. Gen. Stat. § 7B-1110(a):
40. That [Tara] has lived in the . . . foster care home since the child was six (6) days old.
41. That [this placement] is a pre-adoptive placement.
44. That there is a strong and loving bond between the [foster parents] and the child; that the child refers to [them] as "mommy" and "daddy".
45. That there has been no observable bond between [Tara] and her biological parents. . .; that [Tara] has never called [the biological parents] "mommy" or "daddy"; that [Tara] is always ready to return to her foster parents at the end of any visitation period [with] her biological parents.
46. That the guardian ad litem and the child's foster care worker have had contact with [the biological parents] in a nonD-epartment setting at various times, and neither [the mother] nor [respondent-father] asked about [Tara] or the child's well-being.
47. That [Tara] has special health care needs which require medications to be given on time and regular medical care from her pediatrician, pediatric ophthalmologist, and pediatric neurologist.
48. That [Tara] is diagnosed with septo-optic dysplasia with seizures, that are not totally controlled; that she also has optic hypoplasia OD and monocular estropia OD, i.e. [Tara's] right eye turns in.
49. That since [Tara] has been placed with the [the foster parents, they] have met all the child's needs including her special medical needs which include taking her to all her medical and health care appointments, following her doctors' directives and administering any prescriptive drugs for the child.
54. That the juveniles' parents lack of and sporadic visitation with [Tara] demonstrates a lack of parental bond with the child.
55. That the failure of the child's parents to provide reasonable support within their financial ability demonstrates a lack of parental bond with the child.
56. That the failure of the child's parents to appear for this hearing for the determination of the best interests of the juvenile demonstrates a lack of parental bond with the child.
68. That the permanent plan for the child is adoption.
69. That the termination of parental rights of [the parents] with regard to [Tara] will accomplish the permanent plan for the juvenile.
Based on the foregoing findings, we believe that the trial court considered all of the pertinent statutory factors, before determining that it was in Tara's best interest to terminate respondent-father's parental rights.
Respondent-father argues that dispositional finding of fact numbers 54 and 55[4] are not supported by the evidence because respondent-father's alleged disability inhibited his ability to work and to attend visits. We disagree. Findings 54 and 55 are reasonable inferences drawn Ms. Smith's testimony. With respect to finding number 55, Ms. Smith testified that respondent-father did not have employment during the pendency of the case, but had filed a social security disability claim. However, she also testified that he had not provided DSS with any medical documentation regarding his claim. Respondent-father did not present any evidence to prove otherwise, nor did he present any evidence to explain the nature and extent of his alleged disability. Therefore, dispositional finding of fact number 55 is support by competent evidence.
With respect to finding number 54, Ms. Smith testified that respondent-father attended fewer than half of the scheduled visits for approximately one year and ultimately stopped attending the visits altogether. Again, respondent-father neither introduced evidence to refute Ms. Smith's testimony, nor did he attempt to explain his failure to visit his daughter. Therefore, disposition finding of fact 54 is also supported by competent evidence.
Based on our review of the record, we find that the trial court's determination was supported by reason, namely proper consideration of the statutory factors. Therefore, we hold that the trial court did not abuse its discretion by determining that it was in Tara's best interests to terminate respondent-father's parental rights.
Affirmed.
Chief Judge MARTIN and Judge STEELMAN concur.
Report per Rule 30(e).
NOTES
[1] The parental rights of the mother of the juvenile were also terminated by the 5 June 2009 order, but she does not appeal.
[2] Pseudonyms are used for ease of reading and to protect the identity of the parties involved.
[3] During the vast majority of the time that Tara has been in DSS custody, DSS operated under the assumption that respondent-father lived in his mother's home. Respondent-father lived at this residence when Tara was first taken into custody and never informed DSS of any change. At some point around the time of the termination of parental rights hearings, DSS learned that respondent-father might have moved to a trailer, but the information provided was not complete, and respondent-father never clarified the matter.
[4] Respondent-father also challenges dispositional finding of fact numbers 57 and 59. However, these findings are not pertinent to the best interest determination. Thus, for sake of brevity, we decline to address finding of fact numbers 57 and 59.